DECISION AND JUDGMENT ENTRY
This appeal comes to us from an order issued by the Ottawa County Court of Common Pleas, Juvenile Division. That court denied a motion for new trial in a paternity child support case. Because we conclude that a new trial should have been granted, we reverse.
On August 1, 1997, appellant, Wendy W., initiated a suit against appellee, Jock M., seeking to establish paternity of what appellant alleged was the couple's then three month old child, Allen W. On December 30, 1997, the court entered a judgment which ratified the parties' agreement establishing appellee's parenthood of Allen and set at $932.88 per month appellee's temporary child support obligation. On January 27, 1998, appellee, through counsel, moved for custody of Allen. The trial court appointed a guardian ad litem who eventually recommended appellant be designated Allen's primary residential parent.
During the remainder of 1998, the parties attempted to negotiate a shared parenting plan. Each party submitted a plan to the court. Appellee's plan called for each parent to have physical custody of the child for half of the month. Appellant's plan kept the child with her during the evening and allowed appellee to take him during the day. One issue between the parties, according to the guardian ad litem's supplemental report, was that appellee wished to fashion a plan to halve his child support obligation. The guardian recommended adoption of appellant's plan, with the support obligation being modified only so much as to compensate for appellant's reduced child care costs resulting from appellee's added visitation. The court adopted the guardian's recommendations.
However, on January 26, 1999, the court reduced appellee's child support obligation to $408.00 per month, the figure submitted by appellee on a support obligation worksheet for a shared parenting arrangement.
Appellant's response to the January 1999 judgment was to move for a new trial. In support of her motion, appellant pointed out that the $408.00 monthly child support obligation, which the court adopted, was for a shared parenting arrangement — a plan rejected by the court.
On February 24, 1999, the trial court, although not specifically ruling on appellant's new trial motion, set the case for a March trial. Appellee responded, somewhat later, with a motion to dismiss appellant's motion for a new trial. As grounds, appellee asserted that appellant had regularly and repeatedly failed to comply with Juv.R. 20 by failing to serve on appellee's attorney numerous documents, including her motion for a new trial.
Appellant responded, first with a "motion to set child support" which was hand delivered to appellee's attorney, then with a memorandum in opposition to appellee's motion to dismiss, which was also hand delivered to appellee's attorney. In her memorandum, appellant argued that appellee's motion to dismiss should be denied because appellee had actual knowledge of the motion and was not prejudiced by any irregularity of service. Moreover, appellant contended that the downward modification of support (which was the subject of the motion) was even more egregious than originally believed because it now appeared that appellee had all along been hiding hundreds of thousands of dollars in income which should have been entered in to the child support calculations.
On June 10, 1999, the trial court summarily overruled both appellant's motion for a new trial and appellee's motion to dismiss appellant's motion. This appeal followed. Appellant now sets forth the following two assignments of error:
"ERROR NO. 1:
 "THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED WHEN IT ENTERED JUDGMENT AND OVERRULED AND DENIED WENDY [W.'S] MOTION FOR A NEW TRIAL AND FAILED TO HOLD A HEARING ON THE MOTION OR TO CONSIDER INCOME OF JOCK [M.] NOT DISCLOSED TO THE TRIAL COURT AS MANDATED FOR CALCULATION OF CHILD SUPPORT.
"ERROR NO. 2:
 "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ITS JUDGMENT ENTERED JANUARY 26, 1999 BY DEVIATING FROM THE CHILD SUPPORT GUIDE LINES IN SETTING CHILD SUPPORT AND BY FAILING TO CONSIDER ADDITIONAL EVIDENCE OF UNDISCLOSED INCOME OF DEFENDANT-APPELLEE."
Appellee's insertion of the attorney service issue in this matter diverted attention from the merits of appellant's motion. Initially, we note that appellee's reliance on Juv.R. 20 is misplaced as these were proceeding in a parentage action to which the civil rules apply. Juv.R.(1)(C)(4); R.C. 3111.08(A);Nelson v. Pleasant (1991), 73 Ohio App.3d 479, 481. Nevertheless, Civ.R. 5(B) contains a provision comparable to Juv.R. 20, which requires that pleadings subsequent to the original complaint must be served on the attorney of record for the opposing party unless otherwise directed by the court. Even so, in our view, the dismissal of what might have been an otherwise meritorious motion as a sanction for violation of the rule, especially when the opposing party had actual notice of the motion, would have been an overreaction. Accordingly, the trial court did not abuse its discretion in rejecting appellee's motion to dismiss.
With respect to appellant's motion for a new trial, Civ.R. 59 provides numerous grounds for such a motion, most of which fall within the sound discretion of the court. Bible v.Kerr (1992), 81 Ohio App.3d 225, 225. Appellant's motion, however, was based on the January 1999 child support award being contrary to law. When a decision as to whether a motion for new trial should be granted is based solely on a matter of law the decision may be reversed upon the basis that the decision was erroneous as a matter of law. Rohde v. Farmer (1970), 23 Ohio St.2d 82, paragraph two of the syllabus.
Setting aside appellant's assertion the appellee has income that he concealed from the court for purposes of determining child support, it is clear that the trial court adopted its January 1999 child support order from the child support worksheet submitted to the court by appellee. The worksheet computes a monthly obligation of $408.00, which is the amount the court ordered. Appellee's worksheet arrives at that figure by crediting appellee with custody of the infant 49.9 percent of the time in a shared parenting arrangement. The record also reveals that although the parties submitted shared parenting plans, the guardian ad litem recommended against such an arrangement and the trial court adopted the guardian ad litem's recommendation — that is, shared parenting was not ordered.
R.C. 3113.21.5(B)(1) mandates that child support obligations be calculated pursuant to the applicable worksheet and, absent satisfaction of the provisions of R.C. 3113.21.5(b)(3)[1], may not deviate from the result of those calculations. There is no indication of record that the R.C. 3113.21.5(B)(3) factors were considered here. We should also note that even had a shared parenting plan been in place, the court would not have been excused from the R.C. 3113.21.5(B)(3) analysis. Deviation from the child support schedule is not automatic for a shared parenting arrangement, but must be justified as would any other deviation. Pauly v. Pauly (1997), 80 Ohio St.3d 386, syllabus.
In sum, the judgment from which appellant sought a new trial was erroneous as a matter of law. Therefore, the trial court erred in denying appellant's motion. Accordingly, both of appellant's assignments of error, to the extent that they complain of the trial court's denial of her motion for a new trial, are well-taken. As regards to appellant's complaint that at a new trial the court should consider evidence of appellant's "undisclosed income," this issue is not yet ripe for review. We leave that issue to the trial court on remand.
On consideration whereof, the judgment of the Ottawa County Court of Common Pleas, Juvenile Division, is reversed. This matter is remanded to said court for further proceedings consistent with this opinion. Costs to appellee.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
HANDWORK, J., SHERCK, J., KNEPPER, P.J., CONCUR.
[1] R.C. 3113.21.5(B)(3) provides, in material part,
 "(3) The court, * * * may deviate from the amount of support that otherwise would result from the use of the schedule and the applicable worksheet * * * in cases in which the application of the schedule and the applicable worksheet * * * would be unjust or inappropriate and would not be in the best interest of the child. In determining whether that amount would be unjust or inappropriate and would not be in the best interest of the child, the court may consider any of the following factors and criteria:
"(a) Special and unusual needs of the children;
 "(b) Extraordinary obligations for minor children or obligations for handicapped children who are not stepchildren and who are not offspring from the marriage or relationship that is the basis of the immediate child support determination;
"(c) Other court-ordered payments;
 "(d) Extended times of visitation or extraordinary costs associated with visitation, provided that this division does not authorize and shall not be construed as authorizing any deviation from the schedule and the applicable worksheet * * * or any escrowing, impoundment, or withholding of child support because of a denial of or interference with a right of companionship or visitation granted by court order;
 "(e) The obligor obtains additional employment after a child support order is issued in order to support a second family;
 "(f) The financial resources and the earning ability of the child;
"(g) Disparity in income between parties or households;
 "(h) Benefits that either parent receives from remarriage or sharing living expenses with another person;
 "(i) The amount of federal, state, and local taxes actually paid or estimated to be paid by a parent or both of the parents;
 "(j) Significant in-kind contributions from a parent, including, but not limited to, direct payment for lessons, sports equipment, schooling, or clothing;
 "(k) The relative financial resources, other assets and resources, and needs of each parent;
 "(l) The standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued or had the parents been married;
 "(m) The physical and emotional condition and needs of the child;
 "(n) The need and capacity of the child for an education and the educational opportunities that would have been available to the child had the circumstances requiring a court order for support not arisen;
 "(o) The responsibility of each parent for the support of others;
"(p) Any other relevant factor.
 "The court may accept an agreement of the parents that assigns a monetary value to any of the factors and criteria listed in division (B)(3) of this section that are applicable to their situation."